374 F.2d 161
 67-1 USTC P 9292
 COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Richard R. RISS, Sr., Respondent.
Richard R. RISS, Sr., Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).
Richard R. RISS, Sr. and Helen G. Riss, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 18466, 18467, 18469, 18470.
 United States Court of Appeals Eighth Circuit.
 March 10, 1967.
 
 Guy A. Magruder, Jr., of Terrell, Van Osdol & Magruder, Kansas City, Mo., for petitioners Richard R. Riss, Sr., and Transport Manufacturing & Equipment Co. of Delaware.
 Lawrence B. Silver, Atty., Tax Div., Dept. of Justice, Washington, D.C., for Commissioner of Internal Revenue; Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Tax Div., Dept. of Justice, Washington, D.C., on the brief.
 Before VAN OOSTERHOUR, GIBSON and HEANEY, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 Taxpayer Richard R. Riss, Sr.,[1] has filed timely petitions for review of the decisions of the Tax Court entered March 8, 1966, in cases Nos. 18,467, 18,469 and 18,470. These cases were consolidated for trial in the Tax Court and are consolidated here. The Tax Court's opinion, T.C. Memo 1964-190, is unofficially reported in 23 CCH TCM 1113. The petitions before us challenge only the validity of the Tax Court's determination of additional income tax liability of Richard R. Riss, Sr., for individual income tax for the years 1952 to 1956, inclusive. The Tax Court's opinion includes determination of tax liability in other respects not challenged in the present petitions and also treats tax liability of Transport Manufacturing & Equipment Company (T.M. & E.) and Riss & Company in which taxpayer had substantial interests.[2]
 
 
 2
 The Commissioner took a protective cross-appeal in case No. 18,466 which he has abandoned and hence such cross-appeal is dismised.[3]
 
 
 3
 Proper venue for these petitions is conceded. Jurisdiction is conferred upon this court by 26 U.S.C.A. 7482(a).
 
 
 4
 The material facts, many of which are stipulated, are quite fully set out in the Tax Court's opinion. We shall briefly summarize the factual background. Taxpayer Richard R. Riss, Sr., is a resident of Kansas City, Missouri. He has filed timely income tax returns for the years in controversy. Taxpayer was the chief executive officer of Riss & Company and T.M. & E. in the years in controversy.
 
 
 5
 Riss & Company, a corporation, was a common carrier engaged in extensiver interstate motor freight transportation under Interstate Commerce Commission authority. T.M. & E., a corporation, owned and leased to Riss & Company most of the transportation equipment and truck terminals used by it and engaged in some similar business with others.
 
 
 6
 Taxpayer owned all the voting stock of Riss & Company. His children and grandchildren owned the majority of the non-voting stock of such company.
 
 
 7
 T.M. & E. had 202 shares of voting stock outstanding from 1952 to 1955. Taxpayer owned 51 to 52 shares of such stock. Each of his three children, Robert, Richard II and Louise II, owned 50 shares. Taxpayer was board chairman. His son Richard II was president until 1955 when he resigned and sold his 50 shares of stock to the corporation. Such stock apparently was retired. Thus the taxpayer owned approximately 26% of the stock prior to 1955 and 34% of the stock during the remainder of 1955 and 1956. Other facts will be developed hereinafter where material.
 
 
 8
 Taxpayer in his petitions before us asserts that the Tax Court erred in determining his individual tax liability for the years 1952 to 1956, inclusive, in the following respects:
 
 
 9
 1. Charging him with taxable individual income in the form of constructive dividends on the following items:
 
 
 10
 (a) Expenses and depreciation above $300 per month rent paid on State Line residence, owned by T.M. & E., and occupied by taxpayer's former wife and daughter.
 
 
 11
 (b) Value of use plus insurance and operating costs of automobiles furnished by T.M. & E. to taxpayer's former wife and to his sister.
 
 
 12
 (c) $1000 per year for taxpayer's personal use of Cadillac automobile provided by Riss & Company.
 
 
 13
 (d) 75% of Kansas City Club bills paid by Riss & Company which is the percentage of such bills which was disallowed to Riss & Company as a business expense.
 
 
 14
 (e) Expense of Puerto Rico trip which was disallowed to Riss & Company as a business expense.
 
 
 15
 2. Erroneous computation of allowable depreciation upon a DC 4 airplane.
 
 
 16
 3. Erroneous determination that 'time payments' received by taxpayer under DC-4 lease were to be treated as ordinary income.
 
 
 17
 The general principles applicable to review of Tax Court decisions are well-established. Decisions of the Tax Court are reviewable in the same manner and to the same extent as decisions of the District Court in civil actions without a jury. 26 U.S.C.A. 7482. The claerly erroneous standard applies. If the findings are supported by substantial evidence upon the record as a whole and not against the clear weight of the evidence or induced by an erroneous view of the law, they cannot be upset. Lessmann v. Commissioner of Internal Revenue, 8 Cir., 327 F.2d 990, 993; Schoenberg v. Commissioner of Internal Revenue, 8 Cir., 302 F.2d 416, 419.
 
 
 18
 Deficiency assessments of the Commissioner are usually presumptively correct. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. The burden of proof, apart from fraud issues not here present, is on the taxpayer. Hamm v. Commissioner of Internal Revenue, 8 Cir., 325 F.2d 934, 937; Banks v. Commissioner of Internal Revenue, 8 Cir., 322 F.2d 530, 537. Such is also the rule in constructive dividend cases. Flomarcy Co. v. Commissioner of Internal Revenue, 2 Cir., 324 F.2d 730.
 
 
 19
 The presumption of correctness rule is usually dispositive of a case in situations where the taxpayer offers no substantial evidence to overcome the presumption created by the Commissioner's determination. However, when the taxpayer has offered substantial evidence to support his position, the presumption disappears. The fact issue must then be resolved by the Tax Court upon the basis of the evidence before it. If the taxpayer has demonstrated that the deficiency determination is erroneous, the taxpayer is not required to establish the correct amount of tax. In this situation, Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623, teaches:
 
 
 20
 'Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271 (50 S.Ct. 263, 74 L.Ed. 848); Wickwire v. Reinecke, 275 U.S. 101, 105 (48 S.Ct. 43, 72 L.Ed. 184); Welch v. Helvering, 290 U.S. 111, 115 (54 S.Ct. 8, 78 L.Ed. 212). Frequently, if not quite generally, evidence adequate to overthrow the Commissioner's finding is also sufficient to show the correct amount, if any, that is due. See, e.g., Darcy v. Commissioner (of Internal Revenue) 66 F.2d 581, 585. But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that Lawfully might be charged against him. On the facts shown by the taxpayer in this case, the Board should have held the apportionment arbitrary and the Commissioner's determination invalid.'
 
 
 21
 See Poletti v. Commissioner of Internal Revenue, 8 Cir., 330 F.2d 818; Campbell County State Bank v. Commissioner of Internal Revenue, 8 Cir., 311 F.2d 374, 379.
 
 
 22
 The fact finder, here the Tax Court, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. Investors Diversified Services v. Commissioner of Internal Revenue, 8 Cir.,325 F.2d 341, 351-352.
 
 I.
 
 23
 We now pass to the law relating to constructive dividends. Title 26 U.S.C.A. 61(a)(7) defines gross income as including income from whatever source derived, including dividends. Title 26 U.S.C.A. 316(a) defines dividends as including any distribution made by a corporation to its sharesholder out of earnings or profits.[4]
 
 
 24
 A taxpayer who is a stockholder has been held to have received constructive dividends in many situations where he has received an economic benefit as a result of the payment made to him or for his benefit by the corporation. Examples are excessive salaries, Heil Beauty Supplies v. Commissioner of Internal Revenue, 8 Cir., 199 F.2d 193; diversion of corporate income to shareholder, Dawkins v. Commissioner of Internal Revenue, 8 Cir., 238 F.2d 174; Simon v. Commissioner of Internal Revenue, 8 Cir.,248 F.2d 869; corporate fulfullment of personal obligation of a shareholder, Sachs v. Commissioner of Internal Revenue, 8 Cir., 277 F.2d 879; payment of individual expenses of a shareholder, Greenspon v. Commissioner of Internal Revenue, 8 Cir., 229 F.2d 947; and personal use of corporate property by a shareholder, Challenge Mfg. Co., v. Commissioner of Internal Revenue, 37 T.C. 650.
 
 
 25
 The distribution need not be formally declared as a dividend by the corporation. The motive or expressed intent of the corporation is not determinative. Constructive dividends have been found contrary to the expressed intent of a corporation. Sachs v. Commissioner of Internal Revenue, supra; Simon v. Commissioner of Internal Revenue, supra. There is no requirement that the distribution be pro rata among the shareholders or that all shareholders participate in receiving a distribution. Simon v. Commissioner of Internal Revenue, supra; Lengsfield v. Commissioner of Internal Revenue, 5 Cir., 241 F.2d 508, 511.
 
 
 26
 The underlying basis of taxation of constructive dividends is found in the oft repeated statement reading: 'The courts, as arbiters of the true nature of corporate payments, have consistently used as a standard the measure of receipt of economic benefit as the proper occasion for taxation.' Sullivan v. United States, 8 Cir., 363 F.2d 724, 728; Idol v. Commissioner of Internal Revenue, 8 Cir., 319 F.2d 647, 651; Sachs v. Commissioner of Internal Revenue, supra. To like effect, see Niederkrome v. Commissioner of Internal Revenue, 9 Cir., 266 F.2d 238, 243; Holsey v. Commissioner of Internal Revenue, 3 Cir., 258 F.2d 865, 868; Hash v. Commissioner of Internal Revenue, 4 Cir., 273 F.2d 248, 250.
 
 
 27
 Thus, where a corporation makes a distribution to a shareholder which serves no legitimate corporate purpose and which results in an economic benefit to the shareholder, little difficulty is experienced in treating such payment as a constructive dividend to the benefited shareholder.
 
 
 28
 There are some cases which hold that a dominant stockholder is taxable on a distribution of corporate earnings made at his demand or request to a third person for some purpose which he wished to serve, although he received no economic gain. See Commissioner of Internal Revenue v. Makransky, 3 Cir., 321 F.2d 598; Byers v. Commissioner of Internal Revenue, 8 Cir., 199 F.2d 273. Such cases are apparently based upon the assignment of income principle enunciated in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75.
 
 
 29
 In Makransky, the trust directing the payment was the sole stockholder. In Byers, the controlling stockholder directing the payments to his children owned 80% of the stock and the Tax Court opinion, which we affirmed, charged the taxpayer-shareholder income on the basis of his proportional shareholder interest of the amount so diverted. See Helvering v. Gordon, 8 Cir., 87 F.2d 663.
 
 
 30
 The First and most troublesome of the constructive dividend issues facing us arises out of the charge to the taxpayer as income sums averaging about $16,000 a year for each year here involved, which is the amount of depreciation and expenses in each year in the State Line residence owned by T.M. & E., above the $300 per month rental paid by the taxpayer. The additional rental claimed plus the rental paid would bring the rent up to approximately $1600 per month.
 
 
 31
 The State Line residence was purchased by T.M. & E. in 1949 for $97,000, of which $15,000 was for 4 1/2 acres of land, $70,000 for the twenty-room house built about 1937, and $12,000 for furnishings. The Tax Court, as was its privilege, rejected evidence upon the part of T.M. & E. that this property was acquired for business or investment purposes and disallowed the business expense deduction to T.M. & E. to the extent that the depreciation and expenses exceeded the rentals received. The propriety of such disallowance is not now before us.
 
 
 32
 The Court then went on to hold such excess of expenses and depreciation above rentals paid constitutes income of taxpayer Riss, Sr., in the form of constructive dividends. There is no express determination of the fair rental value of the property. The Tax Court in its opinion states, 'Petitioner must have known at the time it purchased the properties that the cost of maintaining them and depreciation would far exceed the expected rentals.'
 
 
 33
 There is no substantial evidence in the record to support a finding of a fair rental value of $1600 per month for the State Line property or even to show that the $300 per month paid was not a fair going rental. A qualified real estate agent testified that the property was listed with him for sale and that he had shown it a number of times, but that purchasers of such property were becoming increasingly scarcer because of the cost of upkeep and the difficulty in obtaining servants necessary to operate it at a reasonable price. In responding to a question as to the rental value, he testified, 'It would be very difficult to rent at any price because families that can afford the upkeep of that type of property are few and far between.
 
 
 34
 T.M. & E. acquired a home in Shawnee Mission, Kansas, in 1953 for $70,750. This was rented to and occupied by Richard Riss II up to May 1955, when he severed his connection with the company, for $200 a month. Depreciation and expenses above rental ran about $8,000 per year and such excess above rent was disallowed T.M. & E. as a business expense. By stipulation with the Government, it was agreed that the fair rental value of such property was $300 per month and that the underpayment of $100 a month on the rent should be considered constructive dividend income taxable to Richard Riss II.
 
 
 35
 Another residence purchased in 1952 for $38,000 was rented and occupied by Robert Riss at a rental of $90 per month. By stipulation, Robert conceded the fair rental value to be $225 per month and the difference between the rental paid and the rental value agreed upon was taxed to him as constructive dividend income.
 
 
 36
 The foregoing transactions, while having no conclusive effect upon the rental value of the State Line property, shed some light on the rental values in the area. It is also significant that the constructive dividend was in each of such instances charged to the shareholder-occupant who received the economic benefit.
 
 
 37
 The State Line house was occupied by Louise Riss, divorced wife of taxpayer, and for part of the time by Louise Riss II and Richard Riss II, both of the latter being adults, and substantial stockholders of T.M. & E. As a result of a divorce property settlement, taxpayer had no legal obligation to provide for a home or support. There is evidence that taxpayer did make payments for the benefit of his wife for various purposes. He also paid the $300 per month rent on the State Line home. There is, however, no finding that he agreed to pay more than $300 toward the rental of the State Line property and we find no substantial evidence which would support such a finding. Taxpayer had no legal obligation to supply the home to any of its occupants. He did not make his home in the State Line residence during any of the time here material.
 
 
 38
 If, contrary to what we have heretofore said, the rental charged and paid did not in fact represent the fair rental value of the property, no basis exists for charging the excess claimed as a constructive dividend on the basis of economic benefit received.
 
 
 39
 We likewise fail to find anything in the assignment of income cases which would warrant an affirmance. While taxpayer as chairman of the board with long experience in the corporation's business and as father of the stockholders doubtless had a considerable influence on corporate decisions, the fact remains that he was at all times a minority stockholder. There is no basis for a determination that the taxpayer commanded or coerced the rental arrangement on the State Line property. As heretofore pointed out, Louise II and Richard II, substantial stockholders, made the premises their home for a portion of the time involved and would thus appear to have received a direct economic benefit out of the use of the premises. Moreover, the stockholders other than taxpayer were all children of Louise and hence would appear to have an interest equal to that of taxpayer in providing Louise with a home.
 
 
 40
 The only case cited by the Tax Court in support of its decision is Challenge Mfg. Co. v. Commissioner of Internal Revenue, 37 T.C. 650. Such case is clearly distinguishable and in no sense controlling here. There the Tax Court, on the basis of substantial evidence, determined that shareholder Castendyck was a boating enthusiast, that the company-owned boats were principally devoted to his personal use and pleasure, and that one-half of the cost of operation and maintenance of the boats should be disallowed as a corporate deduction and that such portion disallowed should be taxed to Castendyck as an expenditure made by the corporation for his personal benefit.
 
 
 41
 No cases have been cited or found which would support constructive dividend treatment to the depreciation and maintenance expense above rentals. The fact that such items were disallowed as a corporate business expense does not in itself establish that an economic benefit flows to a shareholder. Moreover, upon the record before us it is extremely doubtful whether a willing renter could be found for this unique property for a sum in excess of the $300 per month rental paid. There is no substantial evidence that the property could be rented for a greater amount. We hold that the Tax Court erred in charging the taxpayer payer with constructive dividend income flowing from this transaction.
 
 
 42
 The Tax Court upheld the Commissioner's determination that the taxpayer is chargeable with constructive dividend income for the value of use and a portion of the insurance and operating expense of cars provided by T.M. & E. for taxpayer's divorced wife and his sister. We believe that the Tax Court should be affirmed upon this issue upon the basis of its opinion, which reads in part:
 
 
 43
 'Petitioner has conceded in his petitions that his wife and sister had the use of the automobiles and that reasonable amounts may be allocated to such use, but that allocations made by respondent are unreasonable and excessive. The statement contained in the petition in Docket No. 74954 applicable to the years 1952, 1953 and 1954 is as follows:
 
 
 44
 The petitioner's wife Louise V. Riss, and his sister, Lena Riss, occasionally availed themselves of the use of automobiles owned by Transport Manufacturing & Equipment Company. The petitioner concedes a reasonable sum may be allocable as income for the use of these automobiles but denies the excessive sum asserted in the statutory notice to be a reasonable value for such use.
 
 
 45
 'We take the concessions made by petitioner to mean that some portions of the amounts in dispute are includable in his income and that he is contesting only the amounts of the allocations made by respondent; otherwise the concessions are meaningless.
 
 
 46
 'There is no evidence before us as to the type or extent of the use of the automobiles by either the wife or sister and we have no way of determining whether the allocations made by the respondent are excessive. Respondent's determination of the amounts includable in petitioner's income in each of the years is therefore sustained.'
 
 
 47
 In our view, the Tax Court made a reasonable interpretation of the concession made by the taxpayer in his pleadings. Concessions similar to the one quoted by the Tax Court were made in the pleadings involving the same issue for the years 1955 and 1956. It is not established that the taxpayer received an economic benefit from the use of the cars by his divorced wife and sister. However, we agree with the Tax Court that the taxpayer is bound by the admission in his pleadings that he is chargeable with the reasonable value of such use of the automobiles. The Tax Court properly determined that the taxpayer failed to meet the burden upon him of showing the cahrges made by the Commissioner were unreasonable.
 
 
 48
 Taxpayer was furnished with a Cadillac automobile by Riss & Company. He conceded that he used such car to some extent for a personal use including some driving to and from his farm home and to various clubs. The Commissioner determined the value of the personal use at not less than $1,000 per year. No evidence was introduced with respect to the total operating cost of the car or to afford any basis for allocating the cost between business use and personal use. Taxpayer has failed to meet the presumption of correctness of the Commissioner's allocation. The decision of the Tax Court on this issue is affirmed.[5]
 
 
 49
 Riss & Company paid as business expenses bills of the Kansas City Club aggregating about $6,000 to $7,500 per year. Seventy-five percent of such bills were disallowed Riss & Company as business expenses by the Commissioner and such disallowed portion was taxed to taxpayer as constructive dividend income.
 
 
 50
 Taxpayer had been a member of the Kansas City Club for many years. During the years in controversy, he maining one or more rooms at the Club for the use of himself and his guests. During such period a room was kept available for him at all times and some substantial personal use was made thereof. Such arrangement was discontinued after taxpayer's marriage to Helen Riss in 1956. Legitimate business use of the Club account was also made by taxpayer and other Riss & Company officers.
 
 
 51
 The Tax Court states in its opinion that there is no evidentiary basis for allocation of business and personal expenses. It observes that the taxpayer kept no records and was unable to identify the expenditures from memory and goes on to state: 'It may be that some of the amounts in dispute were spent in furtherance of the business of the company and were, in a general sense, ordinary and necessary business expenses, but we have no way of determining whether it was more or less than found by respondent.'
 
 
 52
 The Commissioner, in allowing 25% of the account as proper business expense, was doubtless applying the rule of Cohan v. Commissioner of Internal Revenue, 2 Cir., 39 F.2d 540. See Poletti v. Commissioner of Internal Revenue, 8 Cir., 330 F.2d 818. We believe that the Tax Court upon the record made reached a permissible conclusion in its determination of the amount to be allowed as a deductible business expense. It is also our view that the taxpayer received an economic benefit with respect to personal expenses at the Club paid by the corporation and that the portion of the bill found to be for taxpayer's personal expense was properly charged to him as constructive dividend income.
 
 
 53
 The Tax Court disallowed as a business expense of Riss & Company an admitted expenditure of $2622.83 incurred on a Puerto Rico trip and taxed such amount as personal income of taxpayer. Taxpayer without corroboration testified that he made such trip, accompanied by Tom Evans who had some Puerto Rico contacts, for the purpose of exploring the purchase of a boat line licensed to transport trailers. The deal was not consummated.
 
 
 54
 Taxpayer urges that the disallowance was likely for the reason that the venture never materialized. See George C. Westervelt v. Commissioner of Internal Revenue, 8 T.C. 1248, 1254. If the disallowance was in fact made upon such a theory, the disallowed expense would not result in an economic benefit to the taxpayer if he were actually making the investigation for a legitimate corporate purpose.
 
 
 55
 The government urges that the basis of disallowance is that the court did not credit the taxpayer's uncorroborated testimony with respect to the purpose of the trip. The Tax Court is of course not required to believe the testimony of any witness and this is particularly true with respect to interested witnesses. Unfortunately, we are unable to discover any fact findings or conclusions in the Tax Court's opinion which indicate the basis upon which this issue was decided. The Tax Court makes no express finding that taxpayer's testimony is not credible nor do we believe such a finding may be fairly implied from the Tax Court's opinion as a whole.
 
 
 56
 We remand this issue to the Tax Court for making findings pertinent to the resolution of this issue and for a decision based upon such findings.
 
 II.
 
 57
 Taxpayer and Daly purchased a DC-4 wrecked airplane in 1953 and had it repaired. The purpose of the purchase was to sell it at a profit. Because of a marked decline in demand for such planes, no sale was at once made. Taxpayer acquired Daly's interest by purchase. The plane was leased in August 1954 to World Airways and was sold in January 1955.
 
 
 58
 Taxpayer claimed depreciation on the plane of $121,776 in 1954 and.$10,148 in 1955, based upon a cost of $365,314 and a useful life of three years, and zero salvage value. The Commissioner allowed depreciation of $29,685 for 1954 and $7,421, for 1955 on the basis of a useful life of five months, the time the lease was in effect, and a salvage value equal to the sales price less the cost of sale. The Tax Court rejected the contentions of both parties but accepted the Commissioner's determination upon a basis subsequently rejected by Fribourg Nav. Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 86 S.Ct. 862, 5 L.Ed.2d 751, and United States v. S & A Co., 8 Cir., 338 F.2d 629. The Commissioner concedes that the Tax Court applied erroneous standards in determining depreciation and states that the depreciation issue should be remanded to the Tax Court.
 
 
 59
 The Taxpayer, as found by the Tax Court, has not supported by evidence his claim of three year's useful life and has particularly failed to support his zero salvage value.
 
 
 60
 The only reasonable solution of the depreciation issue is to remand such issue to the Tax Court for further hearing upon the basis of the Supreme Court's holding in Fribourg. Each party should be afforded an opportunity to offer additional evidence upon the depreciation issue.
 
 III.
 
 61
 The final issue is whether 'time payments' made under a three-year lease of the DC-4 airplane by taxpayer to World Airways were properly found by the Commissioner and the Tax Court to be ordinary income taxable in 1955.
 
 
 62
 The lease provides for a monthly rental of $12,028.97. Such rent has been paid, reported and taxed as ordinary income and is not in controversy.
 
 
 63
 The lessee in addition to the above stated rent agreed to pay the lessor $5 per hour of airframe utilization and $4.50 per hour of engine utilization for each engine. Payments were made under this lease provision in the amount of $12,800.88 in 1954 and $8,766.87 in 1955. Such are the 'time payments' here in controversy.
 
 
 64
 The lessee agreed to keep the airplane in good condition and to pay all costs of repairs except the cost of 'major overhauls' of the airframe and engines. The lessor agreed to retain the time payments in a separate fund and further agreed such fund was available for payment of cost of 'major overhauls'. Additionally, the lease provides:
 
 
 65
 'In the event that the flight time since major overhaul on the aircraft frame and engines at the date of termination or expiration of this agreement exceeds such flight time since major overhaul at the date of this lease, lessee shall pay to lessor such amount if any as may be necessary to provide five dollars ($5.00) for each hour of airframe utilization and four dollars and fifty cents ($4.50) for each hour of utilization of each engine less such amount as may be then deposited by lessor in accordance with paragraph three (3) hereof.'
 
 
 66
 The lessee had made all required time payments and no further payment was due under the foregoing lease provision.
 
 
 67
 The lease was terminated by mutual agreement when the plane was sold in January 1955. No major overhauls had been made during the existence of the lease and no major overhauls were made prior to delivery of the plane to the purchaser.
 
 
 68
 It is not disputed that the time payments belonged to the lessor (taxpayer) on termination of the lease. The Tax Court held that the time payments became taxable in 1955 as it was in that year that such payments were relieved from the covenant to hold them available for overhauls and that the time payments became the absolute property of taxpayer in 1955. See Clinton Hotel Realty Corp. v. Commissioner of Internal Revenue, 5 Cir., 128 F.2d 968. The parties do not dispute the Tax Court's determination that 1955 is the taxable year. Taxpayer reported the time payments as capital gain income in 1955. The Commissioner determined the income to be ordinary income in the form of rents and such determination was upheld by the Tax Court. We affirm on this issue.
 
 
 69
 We believe that an issue of fact is presented on whether the time payments constitute rent. Rent is of course taxable as ordinary income. 26 U.S.C.A. 61(a)(5). The time payments were additional payments required by the lease and were based upon the extent of use of the plane and its component parts. It is true of course that if any major overhaul had occurred during the lease period the cost thereof would have been deducted from the accumulated time payments. Ordinarily no deduction is available for repairs until the repairs have been made nor can any addition to basis be made for capital improvements before the cost thereof is incurred. No money was expended for either of such purposes out of the time payments at any time during the lease or at any time prior to the delivery of the plane to the purchaser.
 
 
 70
 We have no doubt that the use of the plane brought about some wear and tear and diminution in its value and brought the plane nearer to the time when a major overhaul would be required. Such use would in all probability have an effect on the price received upon the sale of the plane. However, we believe this to be an ordinary consequence flowing from the use of personal property, particularly machinery. After the termination of the lease, taxpayer was free to use the accumulated time payments in any manner that he chose. He was under no obligation to use them for overhaul, and in fact did not do so.
 
 
 71
 No cases directly in point have been cited or found upon the precise issue before us. Cases relied upon by the taxpayer, such as Washington Fireproof Bldg. Co., 31 B.T.A. 824, Waggoner v. Commissioner ofInternal Revenue, 15 T.C. 496, and Hamilton & Main, Inc., v. Commissioner of Internal Revenue, 25 T.C. 878, are all factually distinguishable. In those cases, damages above ordinary wear and tear had arisen in connection with the use of the premises or alterations made thereto, and it was held that the reasonable cost of restoration of the damage inflicted, required by the lease, was a return of capital. Here no alterations had been made on the plane which required a restoration to its former condition, and no damage beyond ordinary wear and tear had been incurred. The lessor suffered no greater consequences from the use of his property than would result from the usual and ordinary rental of the equipment.
 
 By way of summary, we hold:
 
 72
 The Commissioner's petition for review in case No. 18,466 is dismissed. Upon taxpayer's petitions for review, the decision of the Tax Court on the constructive dividend issue (1(a)) on the State Line residence is reversed. The decision of the Tax Court on the constructive dividend issue on the Puerto Rico trip expenses (1(e)) and on the depreciation of the DC-4 plane (2) is set aside and remanded for further proceedings consistent with the views here expressed.
 
 
 73
 Upon all other issues, the decision of the Tax Court is affirmed.
 
 
 
 [1]
 Helen G. Riss joins as a petitioner in No. 18,470 solely by reason of her filing a joint return with taxpayer for 1956. For purposes of this appeal, Richard R. Riss, Sr., may be regarded as the sole taxpayer
 
 
 [2]
 Six additional cases involving related taxpayers were consolidated with the cases now before us. Thirty-three hundred and fifteen pages of transcript, exhaustive pleadings, lengthy stipulations and supplements thereto, numerous exhibits, and the Tax Court's 155 page opinion are included in the record before us. Much of such material relates to issues not involved in these appeals. Thus the court is presented with a difficult task in locating the relevant evidence. In many instances, the record location of the evidence is not pointed out in the briefs as required by our Rule 11(b) Third
 
 
 [3]
 The Commissioner in his brief states: 'The Commissioner filed a protective petition for review for the year 1954, for the sole purpose of having that year before this Court in case the taxpayer contended and this Court held that the portion of the time payments received in 1954 should have been taxed as ordinary income in that year. (Doc. Nos. 147, 151.) Since the taxpayer has not made such a contention to this Court, the Commissioner is making no argument based on the protective petition for review
 
 
 [4]
 Some of the involved tax years are governed by IRC 1954 and others by IRC 1939. There is no substantial difference between the 1939 and 1954 code provisions here material
 
 
 [5]
 Riss & Company had no past or present earnings for 1956. Consequently, the Tax Court properly treated the $1,000 for such year as a return of capital