BURTON SIMON and JOAN SIMON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Simon v. Commissioner
Docket Nos. 9960-78, 6617-79, 6618-79, 10061-79.
United States Tax Court
T.C. Memo 1981-198; 1981 Tax Ct. Memo LEXIS 545; 41 T.C.M. (CCH) 1328; T.C.M. (RIA) 81198; April 23, 1981. *545 Isidore Feldman, for the petitioners. Martha Sullivan, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies as follows: Addition to tax
(Sec. 6653(a),
Petitioners
Year
Income tax
I.R.C. 1954)
Burton and Joan
1975
$ 22,720.00
$ 1,136.00
Simon
1976
[2] 34,340.03
Steven Simon
1975
4,215.49
Lauren Simon
1975
4,090.76
After concessions, the two issues remaining are as follows: (1) Whether certain interest and discount profits are taxable to Burton and Joan Simon or to Lauren and Steven Simon; and (2) whether the payment of a country club initiation fee by Burton Simon's wholly owned corporation constitutes a constructive *546 dividend to him. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Petitioners (sometimes hereinafter the parents) resided in Jericho, N.Y., when they filed their petitions in these cases. They timely filed joint Federal income tax returns for 1975 and 1976, and their son and daughter, Steven Simon and Lauren Simon (sometimes hereinafter the children), timely filed individual Federal income tax returns for 1975. Lauren Simon was born on or about November 9, 1958, and Steven Simon was born on or about November 20, 1961. During the years in question, Burton Simon (Burton) was a partner in Lazar Wisotsky (the partnership) and the sole shareholder of Lazar Wisotsky, Inc. (the corporation). Both the partnership and the corporation were in the furrier business. The partnership and the corporation customarily paid their trade suppliers with negotiable promissory notes. These notes matured five to seven months after issuance and bore interest after 60 days. The suppliers could either hold the notes until maturity or "factor" them to others for less than their face value, usually at a discount *547 of 17 or 18 percent. Beginnin in 1971, the parents began buying these notes from the suppliers at a discount slightly less than that demanded by the factors. These purchases were made with funds obtained from five different sources. At least the first two purchases can be traced to accounts at Island Federal Savings and Loan Association (Island Savings) standing in the names of "Joan Simon in trust for Lauren Ann Simon" and "Joan Simon in trust for Steven Keith Simon" (the savings accounts). These savings accounts were opened in 1966 with opening balances of $ 469.19 and $ 425.83. By the time of the first withdrawals, on July 14, 1971, their balances stood at $ 5,729.19 and $ 5,727.16. Various withdrawals were made from the savings accounts to purchase notes, and the payments received upon maturity of some of the notes were deposited into the savings accounts. Joan Simon (Joan) had complete and exclusive control over the savings accounts. The second source of funds was a checking account at the Franklin National Bank opened in late 1971. That account was closed in 1974, and its final balance of $ 5,504.96 was transferred to a checking account at Bank Leumi (the Leumi account), *548 which became the third source of funds. Both of these checking accounts stood in the name of "Burt or Joan Simon," and the parents had complete and exclusive control over them. The fourth source of funds was Joan's savings account is Island Savings. In April of 1974, Joan withdrew $ 10,000 from that account and "loaned" the same to the Franklin National Bank account. More than one year later, the loan was "repaid" from funds obtained from the Leumi account. The fifth source of funds was Bank Leumi, which loaned the parents an aggregate of $ 121,441.95 in 1974 and 1976. The loan proceeds were used to purchase notes from suppliers, and these notes were given as security for the loans. The parents were personally liable on these loans, although in fact they were repaid from the proceeds of the discounted notes as paid upon maturity. All steps in the note transactions were performed by Burton: he signed the promissory notes on behalf of the maker (the partnership or the corporation); he bought the notes from suppliers with checks drawn by him; when the notes became due, they were paid to him; when the proceeds received in exchange for the matured notes were deposited, they *549 were deposited by him into accounts over which he or his wife (but not the children) had control. During 1976, Burton joined the Glen Head Country Club (Glen Head). The $ 4,000 initiation fee was paid by the corporation, which could not join because Glen Head would not accept corporate members. Burton hoped to meet prospective customers of the corporation or the partnership there, and, on occasion, he entertained existing customers at Glen Head. Burton was permitted to bring his family with him to Glen Head. OPINION The first issue involves the question of two is taxable on the discount profit and interest received on account of certain note purchases. Petitioners contend that the funds utilized to make such purchases belonged to the children and that the parents' activities, particularly those of Burton, were accomplished as "agents" for the children, with the result that the children, and not the parents, are taxable on the income derived therefrom. Respondent counters with the assertion that the parents exercised complete dominion and control for their own benefit over the funds utilized and the notes purchased, with the result that the discount profit and interest *550 should be taxable to them. The issues involved are purely factual. The burden of proof is on the petitioners to the extent of the amount of the Commissioner's original determination and is on the respondent as to the amount of increase in the deficiency first claimed in his answer in respect of the taxable year 1976. [3]Welch v. Helvering, 290 U.S. 111, 115 (1933); rule 142(a), Tax Court Rules of Practice and Procedure. Based upon the record as a whole and our evaluation of the oral testimony of the witnesses whom we saw and heard, we hold that both parties have failed to carry their burden. At the outset, we deal with petitioners' assertion that the record herein, particularly the testimony of Burton and Joan as to the ownership of the funds utilized and the activities of each as "agent," is sufficient to establish a prima facie case and that, in the absence of countervailing evidence from respondent (who offered no witnesses), they are entitled to prevail. We disagree. We are not required to accept testimony as gospel, even though it is not controverted; we are entitled to take into account whether it is improbable, unreasonable, *551 or questionable. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972); Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971); Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968); Glimco v. Commissioner, 397 F.2d 537, 540-541 (7th Cir. 1968), affg. a Memorandum Opinion of this Court; Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this point 469 F.2d 1183, 1188 (9th Cir. 1972). [4]
The nub of petitioners' case is that the funds utilized belonged to the children. Moreover, petitioners go further and concede that, at least as to the savings accounts at Island Savings, their position rests on the assertion that the funds involved were derived from sources other than the parents. The fact of the matter is that in its totality the evidence is too vague and uncertain to enable us to *552 reach the conclusion that the funds involved were not derived from the parents and were not the parents' funds over which they maintained dominion and control for their own benefits. In so stating, we recognize that, under appropriate circumstances, funds derived from a parent can become the property of his or her children even though the management and some control thereof remains with the parent, e.g., a trust with delineated dispositive provisions as to the disposition of income and principal for the benefit of the children with the parent as trustee.Cf. United States v. Byrum, 408 U.S. 125 (1972); Estate of Gilman, 65 T.C. 296 (1975), affd. per curiam 547 F.2d 32 (2d Cir. 1976). With respect to the savings accounts, the mere fact that they were labeled "in trust for" is not sufficient to establish petitioners' case and, indeed, petitioners do not so contend. Similarly, we are not convinced that the funds in those accounts originated from sources other than the parents, assuming, without deciding, that such fact, if established, would be determinative. In this latter connection, we note that Joan testified that some of the funds *553 came from the grandparents. None of the grandparents were called to testify, apparently because of their age and health and the difficulty of travel between Florida (where the grandparents were) and New York in January (the time of trial). While we sympathize with the difficulties of obtaining corroborating testimony, such difficulties do not relieve petitioners of their burden of proof. Burnet v. Houston, 283 U.S. 223 (1931). [5]
In addition, petitioners claim that the loans from Bank Leumi represented borrowings on behalf of the children.There is not a scintilla of evidence suggesting that the children agreed to repay the loan or that they ever authorized Burton to do so as their agent. The only obligation to repay Bank Leumi was borne by the parents, and the only persons to exercise dominion and control over the loan proceeds were the parents. Surely, under no circumstances could Bank Leumi have looked to the children (who were minors at the time) *554 to repay the loans. In fact, we conclude that the children had no connection whatsoever with the Bank Leumi loans. While we recognize that one may borrow money and make a gift of, or loan, the proceeds to another, even without interest (see LaFargue v. Commissioner, 73 T.C. 40, 56 (1979), and cases cited thereat), the factual pattersn herein simply does not fit this form of transaction and, indeed, petitioners do not argue for this treatment. Accordingly, the profits generated by the loan proceeds cannot be held to be taxable to the children rather than to the parents. Further, the "loan" from Joan to the Franklin National Bank checking account appears to have been nothing more than a transfer of funds from one account of Joan's to another. Again, there is no evidence establishing that the children authorized the loan or obligated themselves to repay it, nor did the children ever exercise control over the $ 10,000 allegedly loaned to them. For aught that appears in the record, the children never knew of the existence of this indebtedness that petitioners would have us hold that the children incurred, nor did they know of the proceeds which they supposedly invested. *555 Our previous comments about the possibility of borrowing and gifting or loaning the proceeds (see p. 9, supra) are also applicable in this situation. Finally, it is significant that an analysis of the transactions revealed by the record herein accounts for far less than the approximately $ 99,000 thereby produced. Thus, it would apear that funds other than those alleged to belong only to the children were used. In view of the foregoing, we conclude that the record herein is insufficient to enable us to hold that the petitioners in dockets Nos. 9960-78 and 10061-79 have carried their burden of proof that the amounts of interest and discount profit, as determined by respondent in his original deficiency notices, were taxable to the children rather than to the parents. At the same time, we conclude that the record herein is insufficient to enable us to hold, in docket No. 10061-79, that respondent has carried his burden of proof that the additional amounts of interest and disclunt profit, upon which he based his claim for an increased deficiency, were taxable to the parents and not to the children; the fact that petitioners stipulated such additional amounts is insufficient *556 to satisfy respondent's burden as to the underlying factual foundation. Beck Chemical Equipment Corp. v. Commissioner, 27 T.C. 840, 856-857 (1957). With respect to dockets Nos. 6617-79 and 6618-79, respondent has not contended that the children have failed to carry their burden of proof that the amounts of interest and discount profit, as determined by respondent in his deficiency notices, were taxable to the parents and not to them. [6] Indeed, respondent implicitly concedes, by his arguments on brief, that such amounts are not taxable to the children. With respect to the second issue, unless Burton joined Glen Head primarily to benefit the corporation, the payment by the corporation of the country club initiation fee is fully includable by Burton as a constructive dividend. Coors v. Commissioner, 60 T.C. 368, 407-409 (1973), affd. 519 F.2d 1280 (10th Cir. 1975). Moreover, even if petitioners can establish that Burton's primary motivation was nonpersonal, only that amount of the fee proportional to Burton's actual business usage of the facility can be deducted. *557 See Commissioner v. Riss, 374 F.2d 161, 170 (8th Cir. 1967), affg. on this issue a Memorandum Opinion of this Court. The only evidence of the business nature of Burton's Glen Head membership was his own self-serving testimony. Moreover, Burton testified that the only business connection was that a person able to afford a country club membership could afford a fur and therefore all members of the club were potential customers.[7] No records were produced showing that any Glen Head member transacted any business with the corporation in any capacity. No evidence was produced establishing the percentage of Burton's visits to Glen Head attributable to the corporation's business. We are not required to accept Burton's unsupported conclusion that his membership in Glen Head was entirely business-related, [8] and there was no evidence upon which an allocation could be made. Cf. Commissioner v. Riss, 374 F.2d at 170. Therefore, we hold for respondent on this issue. *558 Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners were consolidated herewith for trial, briefing, and opinion: Burton Simon, as Guardian for Steven Keith Simon, a Minor, docket No. 6617-79; Lauren A. Simon, docket No. 6618-79; Burton Simon and Joan Simon, docket No. 10061-79.↩
2. The deficiency notice asserted a deficiency of $ 11,698.00, based in part on alleged unreported interest income of $ 18,647.00. By amendment to his answer, respondent claimed an additional deficiency of $ 22,642.03, based on the allegation that the additional unreported interest income was $ 57,620.69. The stipulation of facts accepts $ 57,620.69 as the correct amount of the interest and discount profit income.↩
3. See note 2, supra↩.
4. See also Leong v. Commissioner, T.C. Memo. 1977-19↩, affd. by order on the basis of this Court's opinion (2d Cir., Dec. 12, 1977, 78-1 U.S.T.C. par. 9152).
5. Petitioners did not seek to keep the record open in order to take the testimony of the grandparents by deposition, as they did with another witness who was unavailable at the time of trial for similar reasons.↩
6. Cf. Garrett v. Commissioner, T.C. Memo. 1968-51↩.
7. Such a tenuous connection is insufficient to justify a deduction. See L.R. Schmaus Co. v. Commissioner, T.C. Memo. 1967-197↩. 8. Petitioners' failure to produce corroborating testimony or documents supports the inference that no such evidence exists. See Dougherty v. Commissioner, 60 T.C. 917, 932-933↩ (1973).