_____

No. 95-2791WM
_____

American Academy of Family       *
Physicians, a not-for-profit     *
corporation,                     *
                                 *
              Appellee,          *    Appeal from the United States
                                 *    District Court for the Western
      v.                         *    District of Missouri.
                                 *
United States of America,        *
                                 *
              Appellant.         *
                               _____

                   Submitted:  April 8, 1996

                    Filed:  August 6, 1996
                               _____

Before FAGG, WOLLMAN, and MURPHY, Circuit Judges.
                               _____

FAGG, Circuit Judge.

      The Internal Revenue Service (IRS) appeals the district court's grant
of a tax refund to the American Academy of Family Physicians (Academy).
The IRS contends the Academy, a tax-exempt organization, is required to pay
federal income tax on certain payments it received through its sponsorship
of group insurance plans.  We conclude the payments are not taxable, and
affirm.

      The Academy is a national association of family physicians that was
organized to represent the interests of family physicians and to promote
quality health care.  The Academy is exempt from federal income tax as a
business league under 26 U.S.C. § 501(a), (c)(6).  The Academy created the
American Academy of Family Physicians Foundation (Foundation) to serve as
the Academy's charitable arm.  The Foundation is exempt from federal income
tax as a scientific and educational foundation.  See id. § 501(a),

(c)(3).

The Academy owns and sponsors group disability, medical, and life insurance plans that are available to Academy members and their employees. The Principal Mutual Life Insurance Company (Principal) underwrites the policies. The policies were initially administered by an individual, and when he died, he bequeathed the business of administering the policies to the Foundation. The Foundation then created AAFP Insurance Services, Inc. (ISI), a separate corporation, and turned over the administration of the insurance plans to ISI. ISI is a for-profit corporation that pays federal income tax on its profits from administering the insurance plans and distributes dividends to the Foundation, which owns all ISI's stock. The Academy provides its membership lists to ISI for fair market value. ISI reports twice a year to an Academy committee, and must obtain the committee's approval before making any changes to the policies.

The Academy members who elect coverage under the group policies pay premiums to Principal. Principal sets aside part of the premium payments as reserves to pay future claims, and Principal controls the investment of the reserves. The group policies require Principal to turn over to the Academy any reserve funds remaining after the policies have been terminated and all the claims have been paid, whenever that might occur. In the meantime, whether the insurance plans are profitable for Principal or not, the policies require Principal to make annual payments to the Academy for Principal's use of the reserves, based on a fixed percentage of the insurance reserves. Principal paid the Academy over $600,000 a year during the Academy's 1984 to 1987 fiscal years. The issue on appeal is whether these annual payments are taxable.

The IRS contends the payments are taxable under 26 U.S.C. § 511, which provides that an organization entitled to a tax

exemption under § 501(a), like the Academy, still must pay income tax on its "unrelated business taxable income."  See id. § 511(a)(1)-(2)(A). Unrelated business taxable income is income the organization earns by regularly carrying on a trade or business that is not substantially related to the purposes or functions entitling the organization to its § 501(a) tax exemption.  Id. §§ 512(a)(1), 513(a).  Here, the IRS concluded Principal's payments to the Academy were compensation for the Academy's sponsorship of the group insurance plans, and the payments qualified as unrelated business taxable income.  The IRS determined the Academy had improperly failed to pay tax on the payments received from 1984 to 1987.  The Academy paid the back taxes and interest assessed by the IRS and then brought this refund action, contending the Academy's participation in the insurance plans did not constitute a trade or business under § 513 and the payments from Principal were interest, a type of income specifically excluded from unrelated business taxable income, id. § 512 (b)(1).  Relying on the parties' extensive factual stipulations, the district court decided the Academy's insurance activities were not a trade or business, granted the Academy summary judgment, and ordered a tax refund.  The district court did not reach the interest issue.

In reviewing the district court's decision, we first must determine the meaning of the phrase "trade or business" in § 513.  Section 513(c) defines a trade or business as "any activity which is carried on for the production of income from the sale of goods or the performance of services."  Treasury Regulation § 1.513-1(b) clarifies this statutory definition by providing that "trade or business" has the same meaning in § 513 as it does in 26 U.S.C. § 162, the Internal Revenue Code section permitting business expense deductions.  United States v. American Bar Endowment, 477 U.S. 105, 110 (1986).  The standard test for whether an activity is a trade or business under § 162 is whether the activity "`was entered into with the dominant hope and intent of realizing a profit.'" Id. at 110 n.1 (quoting Brannen v. Commissioner, 722 F.2d 695, 704 (11th

-3-

Cir. 1984)).  In other words, "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  In keeping with these interpretations of § 162, several courts of appeals have adopted a profit motive test to determine whether an activity is a trade or business for purposes of the unrelated business income tax.  American Bar Endowment, 477 U.S. at 110 n.1 (citing  Professional Ins. Agents v. Commissioner, 726 F.2d 1097 (6th Cir. 1984);  Carolinas Farm & Power Equip. Dealers Ass'n v. United States, 699 F.2d 167 (4th Cir. 1983);  Louisiana Credit Union League v. United States, 693 F.2d 525 (5th Cir. 1982)).  "`[T]he existence of a genuine profit motive is the most important criterion for . . . a trade or business.'"  Professional Ins. Agents, 726 F.2d at 1102 (quoted case omitted);  see Louisiana Credit Union League, 693 F.2d at 532.

In addition to the profit motive requirement, the income-producing activity of a tax-exempt organization must have the general characteristics of a trade or business.  American Bar Endowment, 477 U.S. at 110-11.  Specifically, some courts of appeals have recognized that an exempt organization must carry out extensive business activities over a substantial period of time to be engaged in a trade or business, and we agree with the reasoning of these cases.  See Zell v. Commissioner, 763 F.2d 1139, 1142 n.2 (10th Cir. 1985) (interpreting "trade or business" in § 162);  Professional Ins. Agents, 726 F.2d at 1102 (interpreting §§ 162 and 513);  McDowell v. Ribicoff, 292 F.2d 174, 178 (3rd Cir.) (interpreting § 162), cert. denied, 368 U.S. 919 (1961).  Contrary to the IRS's position, requiring extensive commercial activities is consistent with American Bar Endowment, in which the Supreme Court held the American Bar Endowment's (ABE's) group insurance program was a trade or business for purposes of § 513(c) and triggered the unrelated business income tax, see 477 U.S. at 119.  The ABE's insurance activities were clearly extensive.  The ABE assembled a group of better-than-average insurance risks and negotiated on

their behalf with insurance companies, id. at 111, compiled lists of ABE members and solicited them, collected premiums for the insurer, maintained files on each policyholder, answered members' questions about the policies, and screened claims for benefits, id. at 107.

Moreover, the ABE's significant business activity was important to the Supreme Court's analysis. The Supreme Court decided the ABE's insurance activities met the definition of a trade or business because they involved both the sale of goods and the performance of services, and "possesse[d] the general characteristics of a trade or business." Id. at 110-11. Indeed, the ABE was engaging in the same kind of commercial activities that taxable organizations perform to earn a profit. Id. at 111. Recognizing that "[t]he undisputed purpose of the unrelated business income tax was to prevent tax-exempt organizations from competing unfairly with businesses whose earnings were taxed," the Supreme Court described the ABE's insurance program as a classic example of "the sort of unfair competition that Congress intended to prevent." Id. at 114. Having examined Supreme Court and court of appeals precedents, we conclude we must consider both the Academy's motive for participating in the insurance plans and the nature and extent of the Academy's participation during the relevant tax years.

In our view, the Academy did not have the profit motive required for a trade or business. Id. at 110 n.1. The IRS contends the Academy was earning a profit because the payments from Principal to the Academy were essentially "a brokerage fee for [the Academy's] delivering its members to the insurance company as premium-paying customers." Appellant's Br. at 24. This contention is unsupported by the record and goes against the grain of the parties' stipulations.

The stipulations show the payments were not compensation for

services rendered and were not profit in a commercial sense. As we have already explained, the parties stipulated the group policies entitled the Academy to receive the excess reserves after the policies' termination. Thus, the Academy had a recognizable interest in the reserves Principal was holding. The parties also stipulated Principal was required to make the annual payments to the Academy as "interest on [the] insurance reserves for Principal's use of the reserves." Appellant's App. at 148. These annual payments were based on a specified, annual, fixed percentage of the insurance reserves, and were generated by Principal's investment of the reserves. Further, the parties stipulated the interest on the insurance reserves was payable without regard to the profitability of the group insurance plans. Based on these stipulations, the annual payments were neither brokerage fees nor other compensation for commercial services, but were the way the parties decided to acknowledge the Academy's eventual claim to the excess reserves while Principal was still holding and using the reserves. We need not decide whether the payments were interest within the meaning of § 512(b)(1) as the Academy asserts, because the stipulated record persuades us the payments were not compensation for commercial services performed by the Academy and were not profit for purposes of the unrelated business income tax.

Besides finding no profit motive, we also conclude the Academy's involvement in the insurance plans was not extensive and did not "possess[] the general characteristics of a trade or business." American Bar Endowment, 477 U.S. at 110-11. At most, the Academy purchased the group policies offering coverage to its members, sold its membership lists to ISI for fair market value, allowed Principal and ISI to use the Academy's endorsement, and kept track of the policy provisions to make certain the insurance products the Academy sponsored would meet the needs of its members. The IRS stipulated that ISI handled the promotion, marketing, and administration, and Principal processed the insurance applications and made decisions about coverage. The Academy had no

administrative or underwriting responsibilities, unlike the ABE and the taxpayers in all the other cases the IRS cites on appeal.  See id. at 107, 111;  Texas Farm Bureau v. United States, 53 F.3d 120, 124-25 (5th Cir. 1995); Illinois Ass'n of Professional Ins. Agents v. Commissioner, 801 F.2d 987, 989-90 (7th Cir. 1986);  Professional Ins. Agents, 726 F.2d at 1099, 1100, 1102;  Carolinas Farm & Power Equip. Dealers Ass'n, 699 F.2d at 168; Louisiana Credit Union League, 693 F.2d at 533.  The parties' stipulations make clear the Academy was not engaged in the kind of activities that concerned the Supreme Court in American Bar Endowment.  While the ABE negotiated with an insurance company and performed numerous administrative tasks, 477 U.S. at 107, 111, the Academy neither carried on a tax-free business nor sought a competitive edge for the group insurance program based on the Academy's tax-exempt status.  Instead, it was ISI that operated the group insurance program for a profit and passed its after-tax profits on to the Foundation (in the form of dividends) to support the Foundation's charitable work.  ISI paid income tax like all other competing commercial entities.  Although the Academy made group coverage available by assembling its members into a group and purchasing the policies, the Academy consistently acted like an insurance customer, not an insurance company, and ISI took the active, profit-making role.  We conclude the Academy's involvement in the group policies was not significant enough to constitute a trade or business and expose the Academy to income tax.

Contrary to the IRS's view, "not every income-producing and profit-making endeavor constitutes a trade or business." Groetzinger, 480 U.S. at 35.  The Academy's sponsorship of a group insurance program administered in its entirety by an unrelated, non-exempt corporation with no competitive advantage over other taxable organizations does not translate into taxable business activity for the Academy.  Even if Principal made the payments to the Academy for the Academy's sponsorship -- and the parties' stipulations show otherwise -- the payments would not be taxable.

For purposes of this case, it does not matter whether the payments were brokerage fees, gratuities to promote goodwill, or interest, because the Academy was not engaged in business activity for a profit and the unrelated business income tax does not apply.  We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.