T.C. Memo. 2006-61

UNITED STATES TAX COURT

MAZHAR TABREZI, f.k.a. AGHA HUSSAIN, AND SAJIDA RAZVI,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5213-04.                    Filed March 30, 2006.

Richard D. Grossman, for petitioners.

Kathleen C. Schlenzig, for respondent.

MEMORANDUM OPINION

GOEKE, Judge:  Respondent determined a deficiency in
petitioners' 2001 Federal income tax of $43,829 and an accuracy-
related penalty of $8,765 pursuant to section 6662(a).[1]  After

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
                                                    (continued...)

concessions,[2] the remaining issues for decision are: (1) Whether respondent has the burden of proof in this case under Rule 142(a); (2) whether petitioners must recognize cancellation of indebtedness (COD) income under section 61(a)(12) of $62,707; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a). We hold that (1) respondent has the burden of proof in this case; (2) petitioners do not have to recognize COD income because respondent failed to meet his burden of proving that they were solvent on the date immediately preceding the discharge of the debt (calculation date); and (3) as a result, there is no accuracy-related penalty under section 6662(a).

---

[1](...continued)
Court Rules of Practice and Procedure.

[2]On brief, respondent concedes that petitioners are not liable for COD income attributable to the discharge of three debts as determined in the notice of deficiency because that income is excludable under sec. 108(a)(1)(B). However, respondent also takes the position that petitioners must recognize COD income of $62,707 from discharge of a fourth debt that was not included in the notice of deficiency. In addition, respondent continues to assert that petitioners are liable for the accuracy-related penalty under sec. 6662(a). Respondent also determined in the notice of deficiency that petitioners had gross income of $13 in dividends received by Sajida Razvi from her Mellon Investment Services account. Petitioners did not raise this item of income in their petition or otherwise argue against it throughout the litigation process. We therefore consider petitioners to have conceded their liability on the dividend issue.

## Background

Petitioners, who are husband and wife, resided in Glendale Heights, Illinois, at the time of filing their petition. Between December 1998 and May 1999, petitioners signed 22 notes as the obligors in the aggregate principal of $2,529,700 and 22 mortgages securing those notes. Petitioner Sajida Razvi's brother, Syed Razvi, asked petitioners to sign the documents as a personal favor to him. Petitioners signed the documents without extensively reviewing them. Each note was used to purchase a different property (all condominiums) and was secured by a mortgage. There was a covenant in most of the notes and the accompanying mortgages obligating either petitioner to pay the full amount of principal and accrued interest of the debt. Petitioners also signed 22 U.S. Department of Housing and Urban Development (HUD) settlement statements in connection with each mortgage. The principal amount due under each of the 22 notes was over $100,000. Unknown to petitioners, the mortgages were obtained by fraud because the fair market value of the properties securing the mortgages was substantially inflated and, in some cases, was in fact far less than the face amount of the notes that petitioners signed.

In October 2004, Mr. Razvi was indicted for participating in a scheme with others to defraud and obtain more than $27 million of mortgage loan proceeds from various banks and mortgage lending

institutions by means of materially false and fraudulent pretenses. Petitioners, although mentioned in the indictment, were not charged with any crime regarding their involvement in Mr. Razvi's fraudulent scheme, and there is no evidence in the record that petitioners were aware of the fraudulent scheme. Thereafter, most of the properties securing the mortgages were foreclosed upon in separate actions, with petitioners named as defendants. The sheriff then sold the properties in a judicial sale pursuant to the decree of foreclosure. After the sale, the Illinois State court where the actions were brought issued orders approving the sales. Some sales resulted in deficiencies (i.e., the proceeds were less than the judgment amount). In those cases, the plaintiffs (usually a bank or other type of commercial lender) obtained an in rem deficiency judgment[3] against the properties but did not obtain an in personam judgment against petitioners. Other sales resulted in zero deficiencies, and the

---

[3] A judgment in rem affects the interests of all persons in designated property, whereas a judgment in personam imposes a personal liability or obligation on one person in favor of another. Hanson v. Denckla, 357 U.S. 235 (1958). It is characteristic of a judgment in rem that it operates on a thing or status rather than against the person, and binds all persons to the extent of their interest in the thing whether or not they were parties to the proceedings. 50 C.J.S., Judgments, sec. 1054 (2005).

outstanding debts were extinguished.  During 2001, four of the notes were partially discharged by the following lenders:

| Creditor | Initial Note Amount | Amount of Debt Canceled |
|---|---|---|
| Household Finance | $111,200 | $62,707 |
| Countrywide Home Loans | 127,200 | 74,670 |
| Superior Federal Bank | 111,200 | 103,171 |
| Washington Mutual | 111,200 | 75,615 |

The Household Finance debt was canceled on April 27, 2001, and the Superior Federal Bank debt was canceled on March 1, 2001. The remaining debts listed were canceled in 2001.  Petitioners did not include the amounts of debts canceled as income in their 2001 joint Federal income tax return.  Petitioners reported a total income in 2001 of $78,416, comprising mostly wages.

On December 29, 2003, respondent issued petitioners a notice of deficiency for the taxable year 2001.  Respondent determined that the amounts of canceled debt from Countrywide Home Loans, Superior Federal Bank, and Washington Mutual should have been included in petitioners' gross income.  Respondent did not include the canceled debt of $62,707 from Household Finance in the notice of deficiency but raised it at trial through the stipulation of related exhibits without explaining that it was a

new matter.  In the posttrial brief, respondent conceded the discharge of the other three mortgages did not result in COD income because petitioners were insolvent on the calculation dates and argued only for the inclusion of the Household Finance debt in petitioners' income.  Also, respondent conceded that he failed to include the Household Finance mortgage in the notice of deficiency.  Respondent did not attempt to amend any of his pleadings.

## Discussion

A.    Petitioners' Argument That Respondent's Addition of the Fourth Adjustment Increases the Overall Deficiency

Petitioners question whether respondent met the requirements of section 6214(a), which provides:

SEC. 6214.  DETERMINATIONS BY THE TAX COURT.

(a) Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax.--* * * [T]he Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency * * * and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing.

Although respondent argued on brief that the Household Finance mortgage gave rise to COD income without seeking to amend his pleadings, see Henningsen v. Commissioner, 243 F.2d 954 (4th Cir. 1957), affg. 26 T.C. 528 (1956); Koufman v. Commissioner, T.C. Memo. 1977-225; Mazzoni v. Commissioner, T.C. Memo. 1970-37, supplemented T.C. Memo. 1970-144, affd. 451 F.2d 197 (3d Cir.

1971); <u>Cascade Milling & Elevator Co. v. Commissioner</u>, 25 B.T.A. 946 (1932), respondent conceded that the COD income from the discharge of the three mortgages (Countrywide Home Loans, Superior Federal Bank, and Washington Mutual) identified in the notice of deficiency qualified under the exception to COD income provided in section 108(a)(1)(B) because petitioners were insolvent on the dates those mortgages were discharged. The new adjustment claimed by respondent to be COD income is $62,707, while the three mortgages respondent treated in the notice of deficiency as giving rise to COD income totaled $253,456. Therefore, since there is no assertion of an overall increase in deficiency, this case does not fall under section 6214. However, by claiming that an amount arising from a different mortgage is COD income, respondent has raised a new matter and therefore under our Rules has the burden of proof in regard to that claim.

B.    <u>Burden of Proof</u>

Gross income includes income from the cancellation of indebtedness. Sec. 61(a)(12). However, an exception to the inclusion of COD income in gross income is provided for taxpayers who are insolvent at the time of cancellation of indebtedness. Sec. 108(a)(1)(B). The determination of insolvency is based on the taxpayer's liabilities and assets immediately before the discharge of debt. Sec. 108(d)(3). Petitioners claim that they were insolvent on the calculation date. Normally, the burden of

proof is on the taxpayers.  Rule 142(a).  Accordingly, the burden

of establishing that the insolvency exception applies is

generally placed on the taxpayers.  <u>Traci v. Commissioner</u>, T.C.

Memo. 1992-708; <u>Bressi v. Commissioner</u>, T.C. Memo. 1991-651,

affd. 989 F.2d 486 (3d Cir. 1993).  In order to prove insolvency

and therefore qualify for the exception under section

108(a)(1)(B), a taxpayer

> must prove by a preponderance of the evidence that he
> or she will be called upon [as of the date of
> cancellation of the debt] to pay an obligation claimed
> to be a liability and that the total amount of
> liabilities so proved exceed the fair market value of
> his or her assets.

<u>Merkel v. Commissioner</u>, 192 F.3d 844, 850 (9th Cir. 1999), affg.

109 T.C. 463, 468 (1997).

There are exceptions to the general rule that the taxpayers

bear the burden of proof.  See Rule 142(a)(1).  One of those

exceptions is if the Commissioner raises a "new matter".  <u>Id.</u>  If

the new matter is allowed to be raised, Rule 142(a) requires that

the Commissioner bear the burden of proof.  <u>Shea v. Commissioner</u>,

112 T.C. 183, 190-191 (1999).  The Commissioner raises a new

matter when he "attempts to rely on a basis that is beyond the

scope of the original deficiency determination".  <u>Id.</u>  In

particular, a new matter is raised when the Commissioner's new

theory "'either alters the original deficiency or requires the

presentation of different evidence.'" Id. at 191 (quoting Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989)).

Thus, we conclude that respondent has raised a new matter. Respondent went beyond the scope of the original deficiency determination by arguing in his posttrial brief that the discharge of the Household Finance mortgage gave rise to COD income. The deficiency determined in the notice of deficiency was based on COD income from the discharge of three other mortgages. Different evidence is required to show that the Household Finance mortgage generated COD income, because the date of its cancellation, and thus the date for determining petitioners' solvency for purposes of section 108(a)(1)(B) and (d)(3), differs from the date on which any of the other three mortgages was canceled. Therefore, respondent bears the burden of proof and must show, by a preponderance of the evidence, that petitioners were solvent under section 108(a)(1)(B) as of the calculation date. For the reasons discussed below, we conclude that respondent has failed to meet his burden of proof.

C. Respondent's Failure To Meet His Burden of Proof

In order to establish petitioners' solvency as of the calculation date, respondent must prove by a preponderance of the evidence that the fair market value of petitioners' assets then exceeded their liabilities. See Merkel v. Commissioner, 109 T.C. 483, 484 (1997). To exclude from that calculation any portion of

an obligation claimed by petitioners to be a liability, respondent must prove that it is more probable than not that petitioners would not be called upon to pay that portion of the obligation claimed.  Id.

Respondent has failed to prove that the value of petitioners' assets exceeded their liabilities as of the calculation date of April 26, 2001.  The record shows that petitioners had $210,764 in assets with known values, and respondent concedes that petitioner had $213,120 in liabilities on the calculation date.  Respondent claims that petitioners failed to introduce evidence with respect to the values of several of their assets and therefore failed to prove that they were insolvent.  However, the burden of proof is on respondent. Therefore, respondent had the burden to produce evidence that petitioners were not insolvent.  Respondent has not done so.

Petitioners argue that under Illinois State law they were still personally liable for several of their mortgage debts as of the calculation date of April 26, 2001, because the foreclosure sales that took place with respect to those debts had not yet been approved by the Illinois State court.  See, e.g., Citicorp Sav. v. First Chicago Trust Co., 645 N.E.2d 1038, 1045 (Ill. App. Ct. 1995); 27A Ill. Law and Practice, Mortgages, sec. 87 (2005) (quoting Morgan v. Sherwood, 53 Ill. 171 (1870)).  Since we have decided that respondent had the burden of proof in this case and

failed to meet his burden, it is unnecessary for us to decide whether petitioners' liabilities on the calculation date were greater than the amount respondent conceded.

## Conclusion

Because he introduced a new matter, respondent has the burden under Rule 142(a) of proving that petitioners were insolvent.  Rule 142(a).  Respondent failed to meet that burden. We therefore hold that no COD income is includable in petitioners' gross income for the year in suit.  In addition, because we find  there is no COD income, there is no addition to tax.

To reflect petitioners' concession of the dividend income, and the foregoing,

Decision will be

entered under Rule 155.