# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-2526/2529

_____

DKD Enterprises, also known as          *
DKD Enterprises, Inc.,                  *
                                        *
            Appellant,                  *
                                        *
      v.                                *
                                        *
Commissioner of Internal Revenue,       *
                                        *
            Appellee.                   *


_____                     Appeals from the United States
                                        Tax Court.
Nos. 11-2528/2530

_____

Debra K. Dursky,                        *
                                        *
            Appellant,                  *
                                        *
      v.                                *
                                        *
Commissioner of Internal Revenue,       *
                                        *
            Appellee.                   *
                              _____

                  Submitted: February 14, 2012
                       Filed: July 17, 2012
                              _____

Before RILEY, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

The United States Tax Court assessed income tax deficiencies and penalties against DKD Enterprises, Inc. (DKD) and Debra K. Dursky for the years 2003 to 2005. DKD and Dursky appeal. We affirm in part, reverse in part, and remand for further consideration.

## I. BACKGROUND
### A. Facts

DKD is an Iowa corporation wholly owned and managed by Dursky. At all relevant times, Dursky operated DKD out of her personal residence in West Des Moines, Iowa. DKD's principal source of income was information technology consulting. Dursky was DKD's only employee engaged in the consulting business.

DKD also operated a "cattery" to breed, show, and sell pedigree show kittens. Before 2003, Dursky and Elizabeth Watkins operated the cattery as an informal, unincorporated venture. When Dursky and Watkins decided to expand the cattery operation, ostensibly to enhance its national reputation and to increase profits, DKD assumed responsibility for the cattery. Dursky and Watkins continued to manage the cattery from Dursky's home.

To enhance the cattery's national reputation, DKD entered its kittens in national competitions. Dursky and Watkins anticipated breeding national champions would increase the value of DKD's premium show-quality kittens to between $1,000 and $5,000 per kitten. Between 2003 and 2005, DKD's cattery won four national championships.

For the tax years 2003, 2004, and 2005, DKD reported a total income of $198,257, $234,556, and $213,970, respectively. DKD paid Dursky an annual salary of $80,400 plus other compensation, including healthcare benefits and a profit sharing pension plan. DKD paid Dursky $1,000 per month to rent office space in Dursky's residence for DKD's consulting and cattery operations.[1]

During each year of this period, DKD reimbursed $60,968, $66,734, and $68,329, respectively, to Watkins and Dursky for out-of-pocket expenses associated with the cattery, such as travel and competition costs, veterinary bills, cat food, grooming, and supplies. DKD also paid Watkins an annual salary of $7,700 for the approximately 1,700 hours Watkins purportedly devoted to the cattery's operation each year. The cattery produced no revenue in 2003, $250 in 2004 from the sale of three cats, and $1,525 in 2005 from the sale of eight cats.

Due to the substantial costs associated with competing on the national circuit, unexpected expenses and market forces, breeding problems, and inadequate revenues from kitten sales, DKD could not afford to continue operating the cattery. In 2006, DKD abandoned the operation, and Dursky and Watkins resumed managing the cattery as a separate, unincorporated venture.

## B. Procedural History

The Commissioner of Internal Revenue (Commissioner) audited DKD's and Dursky's tax returns from 2003 to 2005 and found substantial tax deficiencies. DKD and Dursky appealed the Commissioner's ruling, and the tax court held a hearing at which both Dursky and Watkins testified. The tax court found much of their testimony to be "questionable, implausible, unpersuasive, uncorroborated, vague, and/or conclusory."

---

[1]The parties agreed the total monthly fair rental value of Dursky's residence was $1,600.

As relevant on appeal, the tax court disallowed DKD's claimed deductions for (1) operational expenses of the cattery, finding the activity was a personal hobby of Dursky rather than a genuine trade or business of DKD; (2) payments toward a profit-sharing pension plan that benefitted Dursky, deciding the plan was ineligible for deductions because it discriminated in favor of Dursky, a highly paid employee; and (3) medical benefits paid by DKD for Dursky's benefit, determining the payments were not made pursuant to a qualifying "plan." With respect to Dursky's returns, the Commissioner found DKD's payments in support of the cattery and to fund the pension plan were constructive dividends to Dursky and therefore constituted taxable income for Dursky, and Dursky was liable for income taxes on the medical benefits payments made by DKD on Dursky's behalf.

The tax court assessed deficiencies against DKD for tax year 2003 in the amount of $22,734 with a $1,965.80 penalty; for tax year 2004 in the amount of $35,064 with a $10,211.60 penalty; and for tax year 2005 in the amount of $30,668 with a $6,133 penalty. The tax court assessed tax deficiencies against Dursky in the amount of $17,476 for tax year 2003; $16,403 with a $3,280.60 penalty for tax year 2004; and $12,604 with a $2,520.80 penalty for tax year 2005.

## II.     DISCUSSION
### A.     Standard of Review

We review decisions of the tax court "in the same manner and to the same extent as decisions of the District Court in civil actions without a jury." Comm'r v. Riss, 374 F.2d 161, 166 (8th Cir. 1967); see also 26 U.S.C. § 7482. We therefore review the court's legal conclusions de novo and its factual conclusions for clear error. See Chakales v. Comm'r, 79 F.3d 726, 728 (8th Cir. 1996). "[A]ll deductions, whether with respect to individuals, or corporations, are matters of legislative grace, and unless the claimed deductions come clearly within the scope of the statute, they are not to be allowed. The burden to make that showing rests upon the taxpayer."

-4-

Five Lakes Outing Club v. United States, 468 F.2d 443, 444 (8th Cir. 1972) (quoting Int'l Trading Co. v. Comm'r, 275 F.2d 578, 584 (7th Cir. 1960)).

### B. Trade or Business

DKD asserts the tax court erred in denying DKD's claimed deductions for the cattery's operational expenses. Under 26 U.S.C. § 162(a), a corporation may deduct from its taxable income "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." To qualify as a trade or business under § 162(a), "the taxpayer must be involved in the activity with continuity and regularity" for the "primary purpose" of "income or profit." Comm'r v. Groetzinger, 480 U.S. 23, 35 (1987). "A sporadic activity, a hobby, or an amusement diversion does not qualify." Id. Whether an activity qualifies as a "trade or business" is a question of fact the taxpayer must prove. See Int'l Trading Co., 275 F.2d at 584.

"The existence of a genuine profit motive is the most important criterion for . . . a trade or business." Am. Acad. of Family Physicians v. United States, 91 F.3d 1155, 1158 (8th Cir. 1996) (quoting Prof. Ins. Agents of Mich. v. Comm'r, 726 F.2d 1097, 1102 (6th Cir. 1984)) (internal marks omitted). In Transport Mfg. & Equip. Co. v. Comm'r, 434 F.2d 373, at 375, 377 (8th Cir. 1970), the tax court found a closely held corporation that was principally in the trucking and freight business lacked a "genuine profit motive" for certain real estate activities. The corporation purchased a luxury estate, ostensibly with the intention of selling the property at a profit, and attempted to deduct the property's operating expenses as "ordinary and necessary business expenses." Id. However, for ten years the corporation made minimal efforts to market the property, which was frequently used by members of the principal shareholder's family for personal use. Id. The tax court found, as a matter of fact, the primary motive of the real estate venture was not "business or investment purposes but rather for the personal benefit" of the taxpayer's family, and was therefore not a deductible trade or business expense. Id. We affirmed. Id.

In the instant case, the tax court found DKD's cattery was Dursky's personal hobby rather than a trade or business. The primary evidence offered by DKD was Dursky's and Watkins' testimony that they intended to operate the cattery for profit. The tax court rejected this testimony. Because "the trial court is not conclusively bound by the taxpayer's stated intention" with respect to the profit motive, Transport Mfg., 434 F.2d at 377, it was not clear error for the tax court to assess witness credibility and weigh the evidence accordingly.

We do not agree with the tax court that "there is no reliable evidence in the record . . . that during each of the years at issue DKD intended to make a profit from DKD's cattery activity." The testimony of Dursky and Watkins was corroborated to some extent because DKD (1) operated a website marketing its kittens, (2) successfully raised four national champion kittens, and (3) earned some income in 2004 and 2005 from kitten sales. The mere fact DKD's cattery expenses vastly exceeded its income is not sufficient to disprove the existence of a genuine profit motive. It also would not be correct for the tax court to disallow a "trade or business" deduction merely because, in the court's view, the business venture was unlikely to produce the desired profits. The rule is clear—the tax court should find the trade or business venture lacked a genuine profit motive only if the court finds, as a factual matter, the taxpayer lacked a good-faith, subjective intention to make a profit and was engaged in the activity for wholly different reasons. See Groetzinger, 480 U.S. at 35 (clarifying "if one's . . . activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of" 26 U.S.C. § 162(a)); Int'l Trading Co., 275 F.2d at 584 (deciding the taxpayer "need not have a reasonable expectation of a profit" but must have a "good faith . . . intention of making a profit or of producing income").

Here, the tax court concluded "DKD expended substantial amounts in DKD's cattery activity for the personal pleasure of Ms. Dursky, its sole stockholder, and with the expectation that it would be able to deduct those substantial amounts for each of

those years." Although we disagree with some of the tax court's reasoning, we cannot say the tax court clearly erred in finding "DKD has failed to carry its burden of establishing that for each of the years at issue DKD's cattery activity constituted a trade or business of DKD within the meaning of section 162(a)." We therefore affirm on this issue.

### C.    Constructive Dividend

Dursky challenges the tax court's finding that DKD's expenditures to finance the cattery were taxable as a constructive dividend to Dursky. A constructive dividend is a payment or economic benefit conferred by a corporation on one of its shareholders. See Riss, 374 F.2d at 167; Sachs v. Comm'r, 277 F.2d 879, 882-83 (8th Cir. 1960); see generally United States v. Ellefsen, 655 F.3d 769, 779 (8th Cir. 2011) ("Where controlling shareholders divert corporate income to themselves, such diverted funds should be treated as constructive dividends." (quoting Simon v. Comm'r, 248 F.2d 869, 873 (8th Cir. 1957)) (internal marks omitted). A constructive dividend is measured in terms of the benefit conferred on the shareholder, not the cost to the corporation. See Sachs, 277 F.2d at 883. Whether corporate expenditures constitute a constructive dividend is a question of fact which we review for clear error. Id. at 881, 883.

The tax court found that "during each of the years at issue DKD expended substantial amounts in DKD's cattery activity for the personal pleasure of Ms. Dursky, its sole stockholder, and that during each of those years that activity was incident to the personal hobby of Ms. Dursky." Dursky argues the tax court applied the wrong test in determining whether DKD's cattery expenditures constituted a constructive dividend. Rather than focusing on the economic benefit the corporation conferred on Dursky, if any, Dursky argues the tax court focused merely on the "personal pleasure" she derived from the cattery. Dursky concludes she was wrongfully assessed a tax penalty merely because DKD engaged in a business activity from which she derived

personal pleasure and satisfaction, even though this activity conferred no tangible economic benefit on Dursky.

We agree with Dursky that a shareholder does not receive a constructive dividend merely because she derives personal pleasure or satisfaction from the operation of her business. However, we disagree with Dursky's interpretation of the tax court's findings. The tax court's constructive dividend finding must be considered in light of its determination DKD lacked a genuine profit motive to operate the cattery. Because DKD lacked a legitimate business purpose to operate the cattery, the tax court reasonably inferred DKD operated the cattery for no other reason than to finance Dursky's personal hobby.

Dursky also argues the tax court erred by calculating the constructive dividend in terms of the cost to DKD rather than explicitly determining the financial benefit to Dursky. Dursky fails to recognize that, in certain circumstances, the value of a constructive dividend may be measured by the cost to the corporation. See Walker v. Comm'r, 362 F.2d 140, 142-43 (7th Cir. 1966) ("The tax court properly upheld the Commissioner's use of the actual out-of-pocket amounts expended by the corporation . . . as the measure of the constructive dividend" where a closely held corporation made a vacation house available for shareholders' personal use without a sufficient business reason). DKD financed the cattery solely for the personal benefit of Dursky, thereby relieving Dursky of the substantial hobby costs associated with the cattery's operation. It was not clear error for the tax court to find, as a matter of fact, the economic benefit conferred on Dursky was equal to the costs incurred by the corporation. We affirm on this issue.

### D.     Profit-Sharing Pension Plan

In 2003, DKD contributed $10,000 to a profit-sharing pension fund established by DKD and managed by Fidelity Brokerage Service, LLC. In 2004, DKD contributed $20,000 to the plan. DKD claimed deductions under 26 U.S.C. §§ 401

and 501(a) for these contributions. The notices of deficiency provided to DKD asserted these payments were not an "ordinary and necessary business expense" and the deductions were therefore improper. At the hearing, the Commissioner raised a different argument, alleging the pension plan discriminated in favor of Dursky, a "highly compensated" employee, because Watkins was not included in the plan. See 26 U.S.C. § 401(a)(4). The tax court agreed with the Commissioner, and denied DKD's claimed deductions and included the contributions in Dursky's taxable income as constructive dividends.

The United States Tax Court Rules provide the Commissioner has the burden to prove "any new matter" raised for the first time before the tax court. See Tax Court Rule 142(a). Proving the new discrimination argument required evidence not necessary under the Commissioner's original theory; therefore, the Commissioner had the burden to prove DKD was ineligible for the deductions under the Commissioner's new position. See Blodgett v. Comm'r, 394 F.3d 1030, 1040 (8th Cir. 2005) ("A new position taken by the Commissioner is not necessarily a 'new matter' if it merely clarifies or develops the Commissioner's original determination without requiring the presentation of different evidence, being inconsistent with the Commissioner's original determination, or increasing the amount of deficiency.").[2]

To prove the plan discriminated against Watkins, the Commissioner produced a document executed by Dursky on behalf of DKD establishing that, as of December

---

[2]Rule 142(a) on its face applies to issues raised for the first time "in the answer." It is unclear on the record before us whether the Commissioner raised this argument in its pretrial briefing, or for the first time in the evidentiary hearing before the tax court. It appears the tax court applies Rule 142(a) to other matters raised for the first time before the tax court. See Tabrezi v. Comm'r, 91 T.C.M. (CCH) 953 at *3 (2006) (applying Rule 142(a) to an argument raised for the first time by the Commissioner in a post-trial brief). The Commissioner has not challenged Dursky's argument that the Commissioner has the burden of proof with respect to this issue, and we conclude Rule 142(a) applies.

2001, Dursky was the only DKD employee enrolled in the pension plan. The Commissioner argues this 2001 document satisfied its burden to prove Watkins was excluded from the plan from 2003 to 2004. We differ. Watkins testified she was not employed by DKD until 2002 or 2003. The Commissioner has offered no evidence to the contrary. The 2001 document, from when Watkins was not an employee, simply has no bearing on the dispositive question of whether Watkins was enrolled in the plan in 2003 or 2004.

The Commissioner asserts, without support, that producing evidence regarding the plan's 2001 enrollment shifted the burden to DKD to prove, in 2003 and 2004, the plan did not discriminate in favor of Dursky. The Commissioner cannot satisfy its burden of proof by presenting wholly irrelevant evidence. Nor can the Commissioner meet its burden of proof by showing DKD did not refute the Commissioner's irrelevant evidence. The Commissioner clearly failed to establish DKD's pension plan discriminated in favor of Dursky.

Furthermore, because funds properly allocated to a qualifying pension plan under § 401(a) are taxable to the beneficiary only when they are actually distributed, see 26 U.S.C. § 402(a), DKD's contributions to the pension plan did not constitute taxable income to Dursky during the tax years 2003 or 2004. DKD is entitled to deduct contributions to the plan under 26 U.S.C. §§ 401(a) and 501, and those contributions are not taxable to Dursky as a constructive dividend.

DKD and Dursky also argue DKD was entitled to deduct a $5,000 contribution made to the pension fund in 2006, which DKD attempted to deduct from its 2005 tax return. The tax court found DKD bore the burden of proof on this matter, because DKD raised the issue for the first time before the tax court. DKD and Dursky do not challenge the tax court's conclusion with respect to the burden of proof.

The tax court decided DKD and Dursky were not entitled to favorable tax treatment with respect to the 2006 payment for the same reason it disallowed the claimed deductions and exclusions in 2003 and 2004.  The court's reasoning on this point is murky, potentially relying on the irrelevant 2001 document and not explaining the support for its allocation of the burden of proof and persuasion.  We cannot decipher this from the record.  We therefore remand to the tax court for further consideration consistent with this opinion.  See, e.g., Montin v. Estate of Johnson, 636 F.3d 409, 413 (8th Cir. 2011) (remanding to the district court because "a reasonable finder of fact could infer" the appellant's position was meritorious based upon evidence that was overlooked).

### E.    Health Benefits Plan

Finally, DKD and Dursky assert the tax court erred in deciding payments made by DKD to provide health insurance for Dursky were neither an "ordinary and necessary business expense" that DKD could deduct under 26 U.S.C. § 162(a) nor an "accident or health plan" excludable from Dursky's income under 26 U.S.C. § 106(a). Because the tax court permissibly found DKD failed to prove the payments were made pursuant to a pre-determined plan for the benefit of employees, we affirm.

Payments made according to a qualifying accident or health plan for the benefit of employees are a deductible business expense for the employer under 26 U.S.C. § 162(a).  See 26 C.F.R. § 1.162-10(a).  Such payments are not taxable income to the beneficiary.  See 26 U.S.C. § 106(a).  Internal Revenue Service regulations adopt an expansive definition of a "plan"—a plan may cover a single employee or limited class of employees; need not be in writing; and need not be enforceable by the employee. See 26 C.F.R. § 1.105-5.  However, there must be an actual plan of which the employee has actual knowledge, in order for medical benefits to qualify for the § 106(a) exclusion and the 162(a) deduction.  See 26 U.S.C. § 106(a); 26 C.F.R. § 1.162-10(a); cf. Larkin v. Comm'r, 394 F.2d 494, 495 (1st Cir. 1968) (deciding for the employer or the employee to claim a deduction for accident or health plan

expenditures under 26 U.S.C. § 105(a), the expenditures must have been made according to an actual plan); Am. Foundary v. Comm'r, 536 F.2d 289, 292-93 (9th Cir. 1976) (same).

We have no difficulty concluding Dursky and DKD failed to prove the health benefit payments were made according to a qualifying "plan." At the hearing, Dursky testified DKD "paid [her] quarterly medical insurance," paying approximately the same amount for her insurance in 2003, 2004, and 2005. Dursky did not testify these payments were made according to a pre-determined "plan" intended to benefit employees. Nor do we find evidence in the record to compel such a conclusion. The tax court's disallowance of DKD's deductions for these payments and requirement that Dursky include them in her income were not clear error.

For the first time at oral argument, Dursky and DKD cited Rev. Rul. 61-146 in support of their claims. According to Dursky and DKD, this ruling compels the conclusion Dursky and DKD are entitled to deduct the medical payments at issue here. We disagree. In Rev. Rul. 61-146, the Commissioner considered whether employees could exclude from their taxable income reimbursements they received from their employer for obtaining private health insurance. There was no question that the payments were made according to a pre-determined plan, or that the plan was known by and intended to benefit employees. Contrary to DKD's and Dursky's assertion, Rev. Rul. 61-146 does not stand for the proposition that any payments made by the employer in payment of an employee's health insurance premiums are necessarily deductible under 26 U.S.C. § 162(a) and excludable under 26 U.S.C. § 106(a). The Ruling provides no basis to overturn the tax court's factual findings. With respect to the health insurance payments, the tax court is affirmed.

## III.   CONCLUSION

We affirm in part, reverse in part, and remand. We affirm the tax court's decisions that (1) DKD's cattery operations costs were not legitimate trade or business

expenses under 26 U.S.C. § 162(a); (2) funds spent by DKD to operate the cattery were taxable to Dursky as a constructive dividend; and (3) funds spent by DKD in payment of Dursky's health insurance plan were not a deductible "accident or health plan" under 26 U.S.C. § 106(a) nor an excludable "ordinary and necessary business expense" under 26 U.S.C. § 162(a). We reverse the tax court's decisions that DKD's contributions to the profit-sharing pension plan for 2003 and 2004 did not qualify for the 26 U.S.C. §§ 401 and 501 deduction as they discriminated in favor of Dursky, a highly paid employee, because, on this record, we conclude these payments were deductible by DKD and not a constructive dividend or otherwise income for Dursky. We remand to the tax court for further consideration as to (1) whether DKD's 2006 contribution to the profit-sharing pension plan qualified for the §§ 401 and 501 deduction in tax year 2005; and (2) whether that distribution is taxable to Dursky as a constructive dividend.

_____